758 F.2d 1426
 Guillermo SOLIS-RAMIREZ, individually and on Behalf of Paula
Sandra SOLIS, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF JUSTICE, Immigration and
Naturalization Service, etc., et al., Defendants-Appellees.
 No. 84-3057.
 United States Court of Appeals,
Eleventh Circuit.
 April 25, 1985.
 
 Charles R. Colbrunn, Orlando, Fla., for plaintiff-appellant.
 Jeffrey J. Tinley, Asst. U.S. Atty., Orlando, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT and CLARK, Circuit Judges, and STAFFORD*, District Judge.
 PER CURIAM.
 
 
 1
 Appellant Guillermo Solis-Ramirez seeks relief from an adverse decision of the Immigration and Naturalization Service (INS) regarding his immigration petition. The district court dismissed the case for failure to state a claim upon which relief could be granted. We affirm.
 
 FACTS
 
 2
 Guillermo Solis-Ramirez is a native of Mexico who seeks immigrant status in the United States. In 1976, after filing the appropriate material with the United States Consulate at Monterey, Mexico, he was classified as a "special immigrant" and given a priority date of August 5, 1976. Under the immigration laws in effect at that time a special immigrant was one "born in any independent foreign country of the Western Hemisphere or in the Canal Zone and the spouse and children of any such immigrant...." 8 U.S.C.A. Sec. 1101(a)(27)(A) (Act of 1965). Even after being accorded that status, Solis-Ramirez could not be lawfully admitted for permanent residence in the United States until he had been issued an immigrant visa number from INS. However, immigration laws only permit a limited number of visas to be issued each year. In 1976, as now, the number of applicants was much greater than the number of visas actually available. Consequently, Congress established a method of allocating the available visas. Under current law, visas are assigned based upon three factors: the applicant's preference classification, the applicant's place of birth and the applicant's priority date. See 8 U.S.C. Sec. 1153(a) (1982).
 
 
 3
 In 1976, when Solis-Ramirez originally was accorded his priority date, immigrants from the Western Hemisphere were not given a preference classification. Instead, visas were allocated to special immigrants based only upon their priority date, assuming all other requirements were met. Special immigrants normally had to have a labor certification before being granted a visa. However this requirement was waived for special immigrants who were parents, spouses or children of United States citizens. 8 U.S.C.A. Sec. 1182(a)(14) (1965 Act). Solis-Ramirez was exempt from the labor certification requirement because he has a daughter who is a United States citizen. Therefore, under the law in effect at the time, Solis-Ramirez had met all the requirements for immigration in 1976 and merely had to wait until his priority date was reached at which time he would be issued a visa. But the backlog of applications gave his application little chance of reaching the priority date.
 
 
 4
 In October of 1976 the immigration laws were amended. See Immigration and Nationality Act of 1976, Pub.L. No. 94-571, 90 Stat. 2703. Under the new law immigrants from the Western Hemisphere and the rest of the world are treated equally. All are subject to the same preference classification system. See 8 U.S.C. Sec. 1153(a) (1982). Immigrants from the Western Hemisphere who had acquired priority dates under the old law were integrated into the preference system by a "savings clause." This clause provides that such immigrants will retain their old priority date and will be classified as non-preference (Section 203(a)(8)) immigrants until another classification is acquired:
 
 
 5
 [Aliens from the Western Hemisphere] who established a priority date at a consular office on the basis of entitlement to immigrant status under statutory or regulatory provisions in existence on the day before the effective date of this Act shall be deemed to be entitled to immigrant status under section 203(a)(8) of the Immigration and Nationality Act and shall be accorded the priority date previously established by him. Nothing in this section shall be construed to preclude the acquisition by such an alien of a preference status under section 203(a) of the Immigration and Nationality Act, as amended by section 4 of this Act. Any petition filed by, or in behalf of, such an alien to accord him a preference status under section 203(a) shall, upon approval, be deemed to have been filed as of the priority date previously established by such alien....
 
 
 6
 Immigration and Nationality Act of 1976, Pub.L. No. 94-571, Sec. 9(b), 90 Stat. 2703, 2707 (1976) (hereinafter "savings clause").
 
 
 7
 Accordingly, under the new laws, Solis-Ramirez is classified as a non-preference immigrant with a priority date of August 5, 1976. However, the new status does not help Solis-Ramirez in his attempt to become a lawful immigrant because the number of applicants is still far greater than the number of visas available. As a result, all visa numbers are alloted to the six preference classifications--no visas have been available to non-preference immigrants since 1978.
 
 
 8
 By October 1982, Solis-Ramirez was living in Florida as an illegal alien. With little chance of attaining lawful immigrant status in the United States as a non-preference immigrant, Solis-Ramirez took steps to elevate his status to that of a sixth preference immigrant. Solis-Ramirez was employed as a harvest supervisor for F.P. Cade & Sons, Inc. Cade filed a petition for a visa for Solis-Ramirez. The INS rejected the application because Solis-Ramirez did not have the labor certification required of sixth preference aliens.
 
 
 9
 When the application was returned, Solis-Ramirez sought administrative review and eventually sought relief in the U.S. District Court for the Middle District of Florida. That relief was denied when the district court granted INS's motion to dismiss for failure to state a claim.
 
 
 10
 On this appeal, appellant raises three issues. First, he claims that the district court did not apply the appropriate standard when considering the motion to dismiss. Second, he claims that the district court improperly considered the motion to dismiss as a motion for summary judgment without the required notice to the plaintiff. Finally, he urges that the proper interpretation of the savings clause permits him to elevate his status to a sixth preference alien without the usual requirement of a labor certificate.
 
 PROCEDURAL CLAIMS
 
 11
 Solis-Ramirez contends that the order of dismissal should be reversed because the district court did not follow proper procedure when it dismissed his complaint. In support of this claim, he argues that the district court did not apply the appropriate standard in its consideration of the motion to dismiss. Appellant correctly states that when considering a motion to dismiss, the court must accept all allegations of fact as true and should only dismiss when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of his claim. Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 65-66, 99 S.Ct. 383, 387-388, 58 L.Ed.2d 292 (1978). But, in this case, even when all of appellant's factual allegations are accepted as true, Solis-Ramirez would not be entitled to relief unless the court adopts his asserted interpretation of the savings clause. However, the statutory interpretation issues raised by appellant are questions of law. The district court is not required to accept as true appellant's conclusions of law when considering a Rule 12(b)(6) motion to dismiss. Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir.1974). On the contrary, the court may make its own determination of the legal issue, as the district court did in this case.
 
 
 12
 After consideration of the statutory interpretation issue, the district court chose not to adopt the construction asserted by the appellant. Concluding that there was no basis in law for appellant's claim, the district court dismissed the case. There is nothing in the record that indicates the district court did not accept all the factual allegations as true. Therefore, appellant's assertions that the district court applied an incorrect standard are without merit.
 
 
 13
 Appellant also asserts that the dismissal was improper in this case because the district court effectively converted appellee's motion to dismiss into a motion for summary judgment when it considered the report of the INS. Federal Rule of Civil Procedure 12(b)(6) provides for this when the court considers matters outside the pleadings. Appellant correctly asserts that as soon as the conversion occurs, the Rule 56 requirements for notice and opportunity to respond become operable. 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1366, p. 683 (1969). He argues that the district court erred by not providing notice and an opportunity to respond. However, no conversion occurred here because the report that appellant claims was improperly considered was attached to the complaint. Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion. Nishimatsu Construction Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir.1975); Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812 (5th Cir.), cert. denied, 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442 (1940). Accordingly, the district court's dismissal was not procedurally defective.
 
 STATUTORY INTERPRETATION CLAIM
 
 14
 Appellant also contends that the dismissal was incorrect because the district court's interpretation of the savings clause was wrong. The district court, relying upon the language of the relevant statutes found that the savings clause does not permit appellant to elevate his status to that of a sixth preference alien without a labor certification:
 
 
 15
 [The savings clause], by its plain language, does no more than preserve the plaintiff's status as an "immigrant," assign him a priority status defined in Section 203(a)(8) of the Act, and preserve his priority date for visa issuance purposes. Nothing in Section 9 of the Act suggests that it was the intent of Congress to exempt the plaintiff from the labor certificate requirement for a preference classification under Section 203(a)(6) of the Act. That Congress' intent was exactly the contrary appears from the contrast between the last sentence of Section 1182(a) as it appeared in Title 8 of the United States Code prior to the 1976 amendments and the comparable sentence as it appeared after the 1976 amendment.
 
 
 16
 Solis-Ramirez v. I.N.S., No. 83-519-CIV-Orl-11, (M.D.Fla. Jan. 10, 1984) (order granting dismissal).
 
 
 17
 Solis-Ramirez argues that the legislative history demonstrates that the savings clause does permit a special alien to apply for sixth preference status without first obtaining a labor certification. But it is a well established axiom of statutory interpretation that in construing a statute, courts must first look to the plain meaning of the statute itself. United States v. Anderez, 661 F.2d 404, 406 (5th Cir.1981). Review of the legislative history is not necessary unless a statute is inescapably ambiguous. The savings clause is not ambiguous. It clearly states that an immigrant who established a priority date under the old act would be deemed a non-preference immigrant under the newly enacted laws. It does not eliminate the labor certification requirement. The district court's interpretation is a correct statement of the law.
 
 
 18
 Moreover, even if the legislative history is considered, as appellant urges, it is clear that the interpretation of the district court is in conformity with the intent of Congress. Appellant has admitted that one reason Congress enacted the new law was to equalize treatment for immigrants from the Eastern and Western Hemispheres. Yet appellant's interpretation would defeat this purpose by permitting certain immigrants from the Western Hemisphere to immigrate without a labor certification. In addition, appellant's interpretation would permit certain immigrants from the Western Hemisphere to enter the United States before other aliens who have important job skills and qualifications that the Labor Department has certified are needed in this country. This would defeat one of the overall purposes of the immigration laws, which is to give preference to those immigrants who have skills which are needed in this country. The court's first duty in construing a statute is to give effect to the intent of Congress. United States v. Second Nat. Bank of North Miami, 502 F.2d 535, 539 (5th Cir.1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). Appellant's interpretation of the statute must be rejected because it would defeat the intent of Congress, and because it is not supported by the plain language of the act.
 
 
 19
 The order of the district court is affirmed.
 
 
 
 *
 Honorable William H. Stafford, Jr., Chief U.S. District Judge for the Northern District of Florida, sitting by designation